(No. 83-CC-0539—)

RUTH ELLIS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 15, 1996.*

CORNFIELD & FELDMAN (GILBERT A. CORNFIELD, of counsel), for Claimant.

JIM RYAN, Attorney General (MARK T. DUNN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, J.

This claim was brought by Ruth Ellis, a tenured professor at Northeastern Illinois University (NEIU). Dr. Ellis began her association with Northeastern Illinois University in 1961 when the institution was known as Chicago Teacher's College North. Dr. Ellis received her Ph.D. from Stanford University and in 1975 was a member of the Psychology Department at NEIU.

It is the claim of Dr. Ellis that the university discharged her without giving her process to which she was entitled under her tenure contract and in violation of section 8(3) of the Board of Governors Act. (110 ILCS 605/8(3).) The Respondent had previously filed a motion to dismiss this matter, and this Court by order executed May 25, 1989, remanded for a factual hearing on the following issues:

(a) Did the Claimant resign or was she discharged by the university?

(b) If she was discharged, was it for good cause, and was she afforded her procedural rights during the process?

We find that Dr. Ellis, in fact, resigned her position in September of 1977.

Between 1953 and 1958, Claimant held several teaching positions in Scandinavia. In 1961, she was hired by Northeastern Illinois University and assigned to the

psychology department. In 1974, Claimant made a request through NEIU for permission to return to Scandinavia in 1975 to teach a seminar. Because of her background, her knowledge of the culture and language, the university agreed to offer a graduate class in human development to be taught by Dr. Ellis in Scandinavia. Eventually, eleven American students enrolled in the class which was to begin in January of 1975, and end on June 30, 1975. Dr. Ellis left for Scandinavia some time before the beginning of classes in January of 1975. In March of 1975, she was diagnosed with having high blood pressure by a physician in Sweden. In June of that year, the course ended and the normal progression of events would have been for Dr. Ellis to return to the United States prior to the next semester in September. However, Dr. Ellis decided to stay in Sweden under the care and direction of her doctor. In January of 1976, while she was improving, her doctor indicated that she needed five to six more months of rest. Dr. Ellis used accumulated sick days for the period between September of 1975 and February of 1976. Her sick days ended as of February 2, 1976.

In August of 1975, the Claimant had called an employee of Northeastern Illinois University, Ms. Diane Hirsch, to acquire information on her options. At this point it was apparent that Dr. Ellis was not sure when she would be returning. Hirsch wrote to Ms. Ellis explaining both the conditions for sick leave and informing Dr. Ellis of how to apply for disability benefits. In September of 1975, Hirsch wrote Dr. Ellis to inform her that she had been placed on sick leave. Hirsch advised the Claimant of her sick leave situation and indicated that she should contact the personnel office well in advance of any disability claims. It was not until February of 1976 that Dr. Ellis actually applied for disability by returning the forms to Hirsch. Because of the delay, she had no choice but to

seek a leave of absence without pay in February of 1976. Her request for disability benefits was never approved. Between February of 1976 to November of 1976, Dr. Ellis was granted her first leave without pay from the university. It is important to note that in August of 1975, Dr. Ellis' physician in Scandinavia reported that her condition had improved and her blood pressure was just slightly above normal. By November of 1976, her blood pressure was stabilized at normal and no further treatment was required. At that time the doctor indicated that she was ready to resume full-time employment. In spite of that fact, in November of 1976, another leave of absence was sought and granted without pay to run from November of 1976 until September of 1977.

The application for disability, which Dr. Ellis had filed in February of 1976, was rejected in April of that year, and she was informed that the Illinois Pension Code requirements had not been met. She was also sent a brochure which explained the options available to her. In May of 1976, Ms. Hirsch, by letter, informed Claimant that she should personally contact the retirement office and also give her specific information. In June of 1976, the State University Retirement System wrote the Claimant explaining its retirement benefits available. She eventually received that letter in August, 1976. In July of 1976, another employee of the university, Ms. Dorothy Bacon, wrote on behalf of the department asking the Claimant to give the department her plans as soon as possible so that the university could make whatever plans were necessary. In August of 1976, the Claimant's actions indicate an unwillingness to return to the United States. It is apparent that she preferred the lifestyle in Scandinavia over that of the Chicagoland area. In September of 1976, Dr. Ellis admitted that she was unsure of what her course of action would be. By October of 1976, the State

Universities Retirement Board took the position that the high blood pressure alone was not sufficient to disable Claimant. It concluded the high blood pressure, if it existed at that time, could be controlled by medication.

Even though her blood pressure had returned to somewhat normal in the fall of 1976, it was not until March of 1977 that the Claimant had indicated an interest in returning to teach. At that time, her correspondence indicated that she would return in the fall when her second leave was up. However, subsequent to that letter she believed her condition regressed and she decided to request for yet a third leave without pay. Not surprisingly, this third leave without pay was denied. She was informed of the decision on September 14, 1977 and she was requested to quickly notify the Department of her intentions. The new semester was to begin shortly. At that time there was a new provost at the university, Mr. John Cownie, and he specifically asked Claimant to inform him of what her intentions were regarding the next semester. On September 20, 1977, the Claimant talked to Hirsch again over the phone. Hirsch memorialized that conversation and that documentation was submitted as evidence. During the course of the conversation, Claimant makes reference to complicated personal reasons why she did not want to return to the United States, only one of which was her health. Faced with the prospect of returning to the United States, Claimant indicated to Hirsch that it was her intention to resign and to follow up on a request to become a professor emeritus. On September 21, 1977, Claimant wrote a letter to the provost. Specifically, she wrote, "I am taking an early retirement effective as of now and I am requesting that the papers necessary to effectuate this be sent to me as soon as is convenient." In a subsequent paragraph the Claimant indicates that she believed she was entitled to the status of

professor emeritus of psychology. She goes on to relate why it is that she is entitled to this position. She further indicates a willingness to return to the university in some capacity to teach. At that time the Claimant was in limbo in terms of her relationship with the university. She was not accruing any service time or benefits and she was not being paid. After that letter, the provost waited approximately three months and finally, on December 8, 1977, he wrote her a letter accepting the resignation as of September 21, 1977. He also indicated that he would pass on her application for emeritus status to the department. In July of 1978, some seven months later, the Claimant wrote a letter to the provost again requesting a clarification of her status. She was informed later that month that her status was that of a retired professor. It was not until 1979 or 1980 that Claimant finally returned to the United States.

The factual scenario which emerges from this record involves a woman with a clear enjoyment of the lifestyle that she found in Scandinavia as compared with that available with teaching at Northeastern Illinois University. She was torn between her love for that lifestyle and her need to return to the university to teach. Because of complicating factors, including her health, she chose the former instead of the latter. Her health problems, however, were not serious enough to justify a disability claim or, if in fact they were, she did not perfect that claim. It was her responsibility to do so and not the employees of the university. She was continually and repeatedly reminded by people at the university of the requirements for the disability claim, and additionally, the need for the university to know her intentions. It was through no fault of the university employees that she placed herself in a corner from which she could not escape. The facts of this case lead to the inescapable conclusion that the Claimant

was not discharged, but simply resigned. Additionally, the claim that her resignation was only conditioned upon her status as a professor emeritus is rejected. Neither her letter of resignation nor her conversations with the employees of the university reflect any conditions to her action.

It is therefore ordered, adjudged and decreed that this claim is dismissed and forever barred.